Timothy L. Salvatore, Esq.
Attorney ID No. PA 77398
Katherman, Briggs & Greenberg, LLP
110 N. George Street, Third Floor
York, PA 17401
717-848-3838 x 2500 Tele
717-814-4056 Direct Fax
Counsel for the Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Ryan Smith  and<br>Christine Smith,<br><br>Plaintiff<br><br>v.<br><br>Stuart Harrison, Southwestern<br>Regional Police Department,<br>Southwestern Regional Police<br>Board, and Spring Grove Borough,<br><br>Defendants. | CIVIL ACTION – LAW<br><br><br>No.<br><br><br>JURY TRIAL DEMANDED |

## <u>COMPLAINT</u>

And now, Plaintiffs Ryan Smith and Christine Smith, by and through their attorneys Katherman, Briggs & Greenberg, LLP and Timothy L. Salvatore, Esq., file this Complaint and allege the following:

### PRELIMINARY STATEMENT

1.      This action for violation of Plaintiffs' civil rights arises from a series of incidents that occurred on May 30, 2018.  On that day, Officer Stuart Harrison of the

Southwestern Regional Police Department used excessive force when he tased Ryan Smith fifteen to twenty times before attempting to arrest him for trespassing, then after placing him in handcuffs, shot him in the leg while trying to get him to put his legs into a police car. Christine Smith, Ryan Smith's mother, was standing at arm's length from her son when Defendant Harrison shot him, causing her great emotional distress.

## PARTIES

2.      Plaintiff Ryan Smith ("Plaintiff Ryan Smith") is an incarcerated adult individual who resides at 195 Nashville Blvd., Spring Grove, PA 17362.

3.      Plaintiff Christine Smith ("Plaintiff Christine Smith") is an adult individual who resides at 195 Nashville Blvd., Spring Grove, PA 17362.

4.      Plaintiff Christine Smith is the mother of Plaintiff Ryan Smith.

5.      Defendant Stuart Harrison ("Defendant Harrison") is an adult individual who resides a 7 Burley Ln., Bluffton, SC 29910.

6.      Defendant Harrison is being sued in his individual and official capacity.

7.      Southwest Regional Police Department ("Defendant SWRPD"), an unincorporated nonprofit association formerly headquartered at 6115 Thoman Drive, Spring Grove, PA 17362, and now operating out of the offices of Spring Grove Borough located at 1 Campus Dr., Spring Grove, PA 17362, was formed under the laws of the Commonwealth of Pennsylvania by an intergovernmental cooperation agreement ("agreement") for consolidation of law enforcement services by and between the Townships of North Codorus, Manheim and Heidelberg and Spring Grove Borough, all political subdivisions of the

Commonwealth of Pennsylvania, situated in the York County, Pennsylvania. Defendant SWRPD provides all law enforcement and policing services to the participating municipalities, including technical supervision, for Southwestern Regional Police Board.

8.    Southwestern Regional Police Board ("Defendant SWRPB") is an unincorporated nonprofit association that provides general supervision, financial administration, and legal administration of the Southwestern Regional Police Department ("SWRPD"), was formerly headquartered at 6115 Thoman Drive, Spring Grove, PA 17362, and now operates out of the offices of Spring Grove Borough located at 1 Campus Dr., Spring Grove, PA 17362.  Defendant SWRPB was formed under the laws of the Commonwealth of Pennsylvania by the same agreement under which Defendant SWRPD was formed.

9.    Spring Grove Borough, aka Borough of Spring Grove, ("Defendant Spring Grove") is a Pennsylvania municipality headquartered at 1 Campus Avenue, Spring Grove, PA 17362, and formed under the laws of the Commonwealth of Pennsylvania. It participated in the agreement for the provision of law enforcement and policing services in its boundaries but ultimately remained responsible for law enforcement and policing services under the agreement.

10.    At all relevant times, Defendants were acting under color of state law.

11.    At all relevant times, Defendants were state actors.

## JURISDICTION AND VENUE

12.    This action is brought pursuant to 42 U.S.C § 1983 concerning Defendant's

violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution.

13.     Jurisdiction lies with this Court under 28 U.S.C. §§ 1331 & 1343.

14.     Pursuant to 28 U.S.C. § 1391, venue in this Court is proper because the events giving rise to this claim occurred in this judicial district.


## STATEMENT OF FACTS

15.     At all relevant times, Defendant Harrison was employed by Defendant SWRPD as a law enforcement officer, specifically as a patrolman.

16.     At all relevant times, Defendant Harrison was also employed by the Defendant SWRPD as a trainer for electronic control weapons (ECWs) or conducted electric weapons (CEWs), including Taser brand devices (hereinafter referred to as "Taser" or "Tasers").

17.     As a training officer, Defendant Harrison was responsible, in whole or part, for setting and maintaining policies, practices, and customs for police officers serving Spring Grove Borough to guard against use of excessive force involving Tasers.

18.     As a trainer, Defendant Harrison served in a supervisory role with regard to educating about and encouraging adherence to policies, practices and customs for police officers serving Spring Grove Borough to guard against use of excessive force involving Tasers.

19.     At all relevant times, Defendant Harrison was acting in the course and scope of his employment with Defendant SWRPD, his authority as a police officer deputized by

Spring Grove Borough, and his authority as a police officer under the control of Defendant SWRPB.

20.    At all relevant times, Defendant Spring Grove provided law enforcement and policing to its citizens through its participation agreement with Defendants SWRPD and SWRPB.

21.    At all relevant times, Defendants SWRPD, SWRPB, and/or Spring Grove were vested with responsibility for management and administration of law enforcement in Spring Grove Borough.

22.    At all relevant times, Defendants SWRPD, SWRPB, and/or Spring Grove were vested with responsibility for supervision and training of the police officers serving Spring Grove Borough.

23.    At all relevant times, Defendants SWRPD, SWRPB, and/or Spring Grove acted through their agents, servants and/or employees, all of whom were acting in the course and scope of their employment and authority.

24.    All police officers serving Defendants SWRPD, SWRPB, and/or Spring Grove, including Defendant Harrison, were deputized by each municipality served under the agreement, including Spring Grove Borough.

25.    Defendants SWRPD and SWRPB were, at all relevant times acting, as the agents, servants, and/or employees of Defendant Spring Grove.

26.    Defendant SWRPD ceased active law enforcement and policing operations on or about December 31, 2019, after the municipalities that it served under the agreement

withdrew participation in the agreement, forcing dissolution of Defendants SWRPD and SWRPB.

27.     Defendants SWRPD and SWRPB are in the process of winding down.

28.     Defendants SWRPD and SWRPB failed to follow the dissolution procedures established under the agreement.

29.     All of the events described herein occurred in Spring Grove Borough.

30.     All of the events described herein arise out of the regional law enforcement and policing services provided by Defendants SWRPD, SWRPB, and/or Spring Grove for the citizens of Spring Grove Borough.

31.     On May 30, 2018, Defendant Harrison was on-duty, providing policing services for Defendants SWRPD, SWRPB, and/or Spring Grove.

32.     On May 30, 2018, Defendant Harrison carried a Taser and a 9mm Glock service pistol.

33.     On May 30, 2018, Defendant Harrison carried his Taser holstered on his left hip.

34.     On May 30, 2018, the Taser carried by Defendant Harrison was bright yellow.

35.     On May 30, 2018, the butt of his Taser faced forward when holstered on Defendant Harrison's left side.

36.     The Taser carry method employed by Defendant Harrison is known as a weak-side carry, cross-body draw position.

37.     Defendant Harrison had to perform a cross-body draw to unholster and deploy his Taser.

38.     The Taser carried by Defendant Harrison was equipped with an ambidextrous thumb safety that was automatically engaged when his Taser was holstered.

39.     The thumb safety on Defendant Harrison's Taser had to be disengaged manually in order to administer a tase.

40.     On May 30, 2018, Defendant Harrison carried his Glock holstered on his right hip.

41.     On May 30, 2018, the Glock carried by Defendant Harrison was black.

42.     On May 30, 2018, the butt of his Glock faced rearward when holstered on Defendant Harrison's right side.

43.     The Glock carried by Defendant Harrison was not equipped with a thumb safety.

44.     On May 30, 2018, Defendant Harrison carried his Glock fully loaded or nearly fully loaded.

45.     On May 30, 2018, Defendant Harrison's loaded Glock weighed almost twice as much as his Taser.

46.     Police officers serving Spring Grove Borough customarily carried Tasers in a weak-side carry, cross-body draw position.

47.     Other methods of carrying a Taser, such as a weak-side carry, weak-side draw position, are more effective in avoiding weapon confusion than a weak-side carry, cross-body draw position.

48.     In a weak-side carry, weak-side draw position, the butt of the Taser faces rearward, requiring that the Taser be unholstered using the weak-side hand that is not used for drawing the police officer's service pistol.

49.     It is believed that discovery will reveal and therefore averred that Defendants Harrison, SWRPD, SWRPB, and/or Spring Grove did not evaluate and consider carry methods to avoid weapon confusion.

50.     At all relevant times, Defendant Harrison was a Taser and firearms trainer for police officers serving Spring Grove Borough.

51.     Defendant Harrison had been a Taser trainer since at least 2006, more than ten years prior to his encounter with Plaintiff Ryan Smith.

52.     Defendant Harrison trained himself and other police officers serving Spring Grove Borough to avoid deployment of a service pistol in place of a Taser.

53.     As a Taser trainer, Defendant Harrison knew or should have known the circumstances under which deployment of a Taser was constitutionally appropriate.

54.     As a Taser trainer, Defendant Harrison should have continued to receive education and educate himself concerning the circumstances under which deployment of a Taser was constitutionally appropriate.

55.     It is believed that discovery will reveal and therefore averred that Defendant Harrison did not train or adequately train himself to avoid weapon confusion and unconstitutional use of Tasers and that he did not educate himself or continue to receive education concerning the circumstances under which deployment of a Taser was constitutionally appropriate.

56.    Regular, systematic, and under-stress training was required to educate police officers concerning the circumstances under which deployment of a Taser was constitutionally appropriate.

57.    It is believed that discovery will reveal and therefore averred that such training did not take place or did not take place with sufficient regularity to educate police officers serving Spring Grove Borough, including Defendant Harrison, about the circumstances under which deployment of a Taser was constitutionally appropriate.

58.    As a Taser trainer, Defendant Harrison helped to shape and set policy, practices, and customs concerning the deployment of Tasers by police officers serving Spring Grove Borough, including Taser carry customs and use practices.

59.    It is believed that discovery will reveal and therefore averred that as of May 30, 2018, Defendants SWRPD, SWRPB, and/or Spring Grove did not have in place, and Defendant Harrison did not establish or encourage to be established, adequate policies, practices, and customs concerning the deployment of Tasers by police officers serving Spring Grove Borough, including Defendant Harrison, to recognize and avoid unconstitutional deployment of Tasers.

60.    On May 30, 2018, it was clearly unconstitutional to do the following:

    a.   tase an unarmed subject who was not fleeing arrest and not resisting or only passively resisting;

    b.   tase a subject for a prolonged period;

    c.   tase a subject for a prolonged period solely for the purpose of inflicting pain;

    d.   tase a subject repeatedly;

    e.   tase a subject repeatedly solely for the purpose of inflicting pain;

    f.   tase a subject without giving the subject an opportunity for compliance;

    g.   tase a subject for reasons unrelated to arrest unless to avoid a risk of harm to the subject himself or others;

    h.   tase a subject for punitive reasons;

    i.   tase a subject in the groin unless necessary to avoid a risk of harm to the subject himself or others;

    j.   tase a handcuffed subject who did not pose a risk of harm to himself or others; and

    k.   employ deadly force unless necessary to avoid a risk of serious harm.

61.    Such acts were recognized as of May 30, 2018, as the use of excessive force in violation of the Fourth Amendment.

62.    Each and every use of a Taser must be justified.

63.    Defendant Harrison cannot justify any of the first fifteen to twenty times that he tased Plaintiff Ryan Smith on May 30, 2018.

64.    It is believed that discovery will reveal and therefore averred that Defendants SWRPD, SWRPB, and/or Spring Grove were aware, prior to the May 30, 2018, of other similar incidents involving the use of excessive force associated with Tasers by police officers serving Spring Grove Borough.

65.    It is believed that discovery will reveal and therefore averred that Defendants SWRPD, SWRPB, and/or Spring Grove failed to modify or adapt their training or their

policies, practices, and customs prior to May 30, 2018, in response to the other similar incidents involving the use of excessive force with Tasers.

66.    If Defendants SWRPD, SWRPB, and/or Spring Grove had, prior to May 30, 2018, established and enforced appropriate policies, practices, and customs concerning the use of force and use of Tasers to avoid the violation of constitutional rights and provided of training regarding the use of force and use of Tasers to avoid the violation of constitutional rights, then Defendant Harrison disregarded such policies, practices, customs, and his own training in his encounter with Plaintiffs Ryan Smith and Christine Smith.

67.    Plaintiff Ryan Smith had a longstanding history of mental health issues prior to May 30, 2018.

68.    Plaintiff Ryan Smith had been released from a hospitalization for psychiatric evaluation on or about May 29, 2018.

69.    Plaintiff Ryan Smith had been acting irrationally and delusional prior to his admission.

70.    Plaintiff Ryan Smith continued to act irrationally and delusional following his discharge on May 29, 2018.

71.    During the course of the day on May 30, 2018 – prior to Plaintiff Ryan Smith's encounter with Defendant Harrison, his family called 911 several times due to his irrational and delusional behavior.

72.    During the course of the day on May 30, 2018, police officers from Northern York County Regional Police Department responded to Plaintiff Ryan Smith's home but did not take him into custody because he did not appear to be a danger to himself or others.

73.   Late in the day on May 30, 2018, Plaintiff Christine Smith heard her son talking about withdrawing money from a bank – which she recognized as irrational and delusional because he did not have any money or a bank account.

74.   Unbeknownst to his family, Plaintiff Ryan Smith had called the Santander Bank ("bank") located at 39 W. Hanover St., Spring Grove, PA 17362, earlier in the day about withdrawing money from his accounts.

75.   During his call with the bank, Plaintiff Ryan Smith was unable to provide a social security number for the bank to confirm his identity and determine which of the accounts in its system from across the nation belonging to a Ryan Smith were, in fact, his accounts.

76.   Upon being told that the bank couldn't confirm which of the accounts in its system from across the nation belonging to a Ryan Smith were, in fact, his accounts and release information to him, Plaintiff Ryan Smith claimed that all of the accounts were his.

77.   Plaintiff Ryan Smith remained under the watchful eye of his family but nevertheless managed to leave his family home without being observed and obtain a ride to the bank.

78.   Upon realizing that her son was not home, Plaintiff Christine Smith immediately began searching for him at the banks closest to their home.

79.   Meanwhile, Plaintiff Ryan Smith had entered the Santander Bank and attempted to withdraw money from accounts that he did not have and without being able to produce identification.

80.     None of the bank staff knew Plaintiff Ryan Smith or had ever encountered Plaintiff Ryan Smith prior to May 30, 2018.

81.     Bank personnel refused to disclose information about accounts or allow Plaintiff Ryan Smith to make a withdrawal because he could not produce photo identification.

82.     It was clear to bank personnel that Plaintiff Ryan Smith was mentally ill or otherwise not in his right mind:

    a.   He was wearing a hospital bracelet;

    b.   He claimed that he had $500,000 in the bank;

    c.   He claimed that they knew him;

    d.   He claimed that they should have known him because of God;

    e.   He kept repeating himself;

    f.   He claimed that all of the accounts, from across various states, that were in the name of Ryan Smith were his accounts;

    g.   He couldn't produce photo identification; and

    h.   He couldn't seem to understand the need to produce photo identification.

83.     Although intimidating in size and appearance and growing visibly frustrated, Plaintiff Ryan Smith made no verbal or physical threats to bank personnel.

84.     Bank personnel called 911 for police assistance.

85.     Minutes before the end of his shift and after he had already returned to the station on May 30, 2018, Defendant Harrison was dispatched by a York County 911 operator to the Santander Bank located at 39 W. Hanover St., Spring Grove, PA 17362, to handle a

report of unruly subject, a gentleman inside being "belligerent and threatening" according to Defendant Harrison.

86.      Upon arrival at the bank and before entering, Defendant Harrison spoke with bank manager who identified Plaintiff Ryan Smith and told Defendant Harrison that Plaintiff Ryan Smith was in the bank trying to take money out accounts that did not exist.

87.      Defendant Harrison did not receive any report of alcohol, drugs, or weapons being involved.

88.      Defendant Harrison did not receive any specific reports that Plaintiff Ryan Smith had acted in a hostile, combative, aggressive or physically threatening manner to bank personnel prior to Defendant Harrison's arrival at the bank.

89.      Defendant Harrison did not receive any specific reports that Plaintiff Ryan Smith had been verbally threatening toward bank personnel prior to Defendant Harrison's arrival at the bank.

90.      Defendant Harrison entered the bank and engaged with Plaintiff Ryan Smith.

91.      There were no circumstances that required hurried decision making or interfered with Defendant Harrison's ability to deliberate regarding his course of action.

92.      Defendant Harrison did not then or at any time thereafter observe any weapons on Plaintiff Ryan Smith or in his possession.

93.      Defendant Harrison did not then or at any time thereafter observe Plaintiff Ryan Smith act in a hostile, combative, aggressive or physically threatening manner.

94.      Defendant Harrison did not then or at any time thereafter observe Plaintiff Ryan Smith issue verbal threats to anyone.

95.    Defendant Harrison observed Plaintiff Ryan Smith standing near the teller counter with his arms clasped low in front of him.

96.    Defendant Harrison observed that Plaintiff Ryan Smith was frustrated.

97.    Defendant Harrison discussed Plaintiff Ryan Smith's refusal to identify himself and his inability to produce photo identification.

98.    Defendant Harrison discussed the need for a photo identification to get money out of the bank.

99.    Defendant Harrison argued with Plaintiff Ryan Smith about the need for photo identification to get money out of the bank.

100.    Defendant Harrison recognized that Plaintiff Ryan Smith couldn't understand the need for  photo identification to make a withdrawal.

101.    Defendant Harrison observed Plaintiff Ryan Smith's hospital bracelet and inquired about it.

102.    Defendant Harrison knew or should have known that Plaintiff Ryan Smith was acting irrationally for the same reasons that bank personnel knew or suspected him to be mentally ill or otherwise not in his right mind.

103.    Defendant Harrison directed Plaintiff Ryan Smith to leave the bank, took a position behind Plaintiff Ryan Smith, and walked toward the main entrance with his hands on Plaintiff Ryan Smith's back.

104.    Plaintiff Ryan Smith walked toward the entrance but turned to face Defendant Harrison once they got near the exit doors.

105.   Defendant Harrison continued to tell Plaintiff Ryan Smith that he needed to leave the bank.

106.   There were no circumstances that required hurried decision making or interfered with Defendant Harrison's ability to deliberate regarding his course of action at that point.

107.   Defendant Harrison opted to escalate the conflict, rather than deescalating it.

108.   When Plaintiff Ryan Smith did not follow Defendant Harrison's directions, Defendant Harrison pulled his Taser from its holster, activated it, and trained its laser sights on Plaintiff Ryan Smith.

109.   Plaintiff Ryan Smith was unarmed, posed no immediate risk of harm to Defendant Harrison or anyone else, and was not under arrest, resisting arrest, or fleeing arrest.

110.   Defendant Harrison and Plaintiff Ryan Smith continued to argue about Plaintiff Ryan Smith's desire to withdraw money and the fact that he could not do so without photo identification.

111.   At no time did Defendant Harrison tell Plaintiff Ryan Smith that if he did not follow his directions to leave the bank that he would be tased.

112.   At no time before he tased Plaintiff Ryan Smith did Defendant Harrison tell Plaintiff Ryan Smith that he was under arrest or that if he did not follow his directions to leave the bank that Plaintiff Ryan Smith would be placed under arrest for trespassing.

113.    At no time did Plaintiff Ryan Smith make any movement toward Defendant Harrison or otherwise that an objectively reasonable police officer could have interpreted as hostile, combative, or aggressive.

114.    When Plaintiff Ryan Smith took a small step to the right and forward, Defendant Harrison fired his Taser at Plaintiff Ryan Smith in dart mode.

115.    Plaintiff Ryan Smith stepped back, pulled his shirt out, dislodging the darts, backed up against a wall, and repeated that he wanted to get his money out of the bank.

116.    Defendant Harrison repeated directions to Plaintiff Ryan Smith that he needed to leave the bank and when Plaintiff Ryan Smith did not comply immediately, Defendant Harrison again fired his Taser at Plaintiff Ryan Smith in dart mode.

117.    Use of Taser in dart mode can, if successful, cause neuro-muscular incapacitation.

118.    Use of a Taser on a subject in dart mode can result in serious bodily harm and death.

119.    Defendant Harrison's attempts to incapacitate Plaintiff Ryan Smith with his Taser in dart mode both failed.

120.    Defendant Harrison then proceeded to tase Plaintiff Ryan Smith between fifteen to twenty (15 – 20) times in drive-stun mode on Plaintiff Ryan Smith's groin, legs, torso, and chest while directing Plaintiff Ryan Smith to leave the bank.

121.    Drive-stun mode involves pressing the contacts on the front of a Taser against a subject and sending electricity through the contacts to shock the subject, in the same manner that a cattle prod works.

122. Use of a Taser in drive-stun mode produces a pain response but does not result in neuro-muscular incapacitation.

123. Use of a Taser on a subject in drive-stun mode can result in serious bodily harm and death.

124. Defendant Harrison initially forced Plaintiff Ryan Smith away from the bank's exit while tasing him, preventing him from doing the very thing he had directed Plaintiff Ryan Smith to do.

125. Plaintiff Ryan Smith reacted defensively to avoid the pain produced by Defendant Harrison's drive-stun tasing, questioned Defendant Harrison as to why he was [messing] with him, and repeated that he just wanted to get his money out of the bank.

126. There was no immediate threat to Defendant Harrison or anyone else in the bank that warranted repeated or prolonged tasing.

127. There were no circumstances that justified Defendant Harrison's first fifteen to twenty (15 – 20) tasings of Plaintiff Ryan Smith.

128. The drive-stun tasing administered by Defendant Harrison did not elicit Plaintiff Ryan Smith's compliance with his directions but Defendant Harrison continued to administer them.

129. Defendant Harrison knew or should have known that drive-stuns were unlikely to gain compliance due to Plaintiff Ryan Smith's altered mental status, especially after his first few attempts were unsuccessful but nevertheless continued tasing him.

130. During neither the first fifteen to twenty (15 – 20) times that Defendant Harrison drive-stun tased Plaintiff Ryan Smith nor at any time thereafter, did Plaintiff Ryan

Smith act in a hostile, combative, or aggressive manner toward Defendant Harrison or anyone else.

131.   At a pause in the tasing – after Plaintiff Ryan Smith had been tased between fifteen to twenty (15-20) times in drive-stun mode, Plaintiff Ryan Smith questioned Defendant Harrison why he was [messing] with him, to which Defendant Harrison responded that Plaintiff Ryan Smith was going to jail because bank personnel had told him to leave and he was being disorderly and trespassing.

132.   Plaintiff Ryan Smith responded that the only one telling him to leave was Defendant Harrison, at which point Defendant Harrison confirmed with bank personnel that they had asked Plaintiff Ryan Smith to leave.

133.   Prior to telling Plaintiff Ryan Smith that he was going to jail, Defendant Harrison had only told Plaintiff Ryan Smith to leave the bank and tased him when he did not follow his directions to do so.

134.   After some additional arguing with Defendant Harrison over not having photo identification and the need for it in order to make a withdrawal, Plaintiff Ryan Smith asked what he was supposed to do and Defendant Harrison responded "go get a picture ID and come back and get your money."

135.   Defendant Harrison and Plaintiff Ryan Smith continued discussing Plaintiff Ryan Smith's inability to make a withdrawal without photo identification and the fact that no one in the bank knew who he was until a second officer from Defendant SWRPD, Officer Michael Matthews, entered the bank.

136.    Once Officer Matthews arrived and entered the bank, Defendant Harrison told Plaintiff Ryan Smith for the first time that he was being placed under arrest by telling him to turn around and place his hands behind his back.

137.    At no time before Officer Matthews arrived at the bank did Defendant Harrison inform Plaintiff Ryan Smith that he was under arrest or did he attempt to arrest Plaintiff Ryan Smith.

138.    Prior to Officer Matthews' arrival, Defendant Harrison had not informed Plaintiff Ryan Smith that he was under arrest or that he would be arrested if he did not comply with directions to leave the bank.

139.    Defendant Harrison and Officer Matthews proceeded to drive-stun tase Plaintiff Ryan Smith numerous times while they restrained him and placed him in handcuffs.

140.    Officer Matthews also tased Plaintiff Ryan Smith using his Taser in dart mode.

141.    Plaintiff Ryan Smith passively resisted their efforts, reacting only to the pain of the drive-stuns tasing and to avoid pain from Defendant Harrison's prior dart mode tasing – which was still arcing under the front of his shirt.

142.    While being restrained and handcuffed, Plaintiff Ryan Smith did not act in a hostile, combative, or aggressive manner toward either officer.

143.    Plaintiff Ryan Smith did not actively resist Defendant Harrison or Officer Matthews after being handcuffed or while being led to Officer Matthews' police car.

144.    As Plaintiff Ryan Smith was being led to the police car, Plaintiff Christine Smith arrived at the bank, approached the officers and excitedly informed them that Plaintiff

Ryan Smith was her son, that her son was not in his right mind, that he had just gotten out the hospital for psychiatric issues, and that Northern Regional Police Department had been involved numerous times earlier in the day.

145.    At the police car, Defendant Harrison and Officer Matthews placed Plaintiff Ryan Smith into a seated position or nearly seated position in the rear seat of the police car.

146.    Plaintiff Ryan Smith's legs weren't in the car and he was not complying with instructions to place his legs in the car.

147.    Plaintiff Ryan Smith was not attempting to flee.

148.    Plaintiff Ryan Smith was handcuffed with his hands behind his back.

149.    Plaintiff Ryan Smith was not acting hostile, combative, or aggressive toward anyone.

150.    Plaintiff Ryan Smith was not verbally threatening anyone.

151.    Plaintiff Ryan Smith was passively resisting.

152.    There were no emergent conditions existing.

153.    Defendant Harrison had ample time to be deliberative about how to get Plaintiff Ryan Smith into the police car before he pulled his Taser or his service pistol or took any other action.

154.    Defendant Harrison did not take time to consider his actions and their consequences.

155.    Defendant Harrison acted rashly.

156.    Defendant Harrison struck Plaintiff Ryan Smith in the thigh three times with his knees to get Plaintiff Ryan Smith to place his legs in the police car.

157.    When Plaintiff Ryan Smith did not comply in response to the physical strikes, Defendant Harrison pulled his service pistol, pressed it to Plaintiff Ryan Smith's thigh, and fired a 9mm hollow-point bullet into his thigh, shattering his femur.

158.    Defendant Harrison later claimed that he was attempting to drive-stun tase Plaintiff Ryan Smith in the thigh.

159.    Defendant Harrison gave Plaintiff Ryan Smith no prior warning that he would be tased if he did not put his feet in the police car.

160.    Defendant Harrison knew or should have known that tasing a handcuffed subject absent fight, flight, or active resistance would be an unconstitutional use of excessive force under the Fourth Amendment.

161.    As a Taser trainer, Defendant Harrison knew or should have known of the risk of weapon confusion.

162.    At no time prior to pulling the trigger of his service pistol did Defendant Harrison look at the weapon he had drawn despite having time to do so.

163.    At no time prior to pulling the trigger on his service pistol did Defendant Harrison notice that the weapon he had drawn was not equipped with a manual thumb safety.

164.    At no time during his encounter with Defendant Harrison on May 30, 2018, did Plaintiff Ryan Smith do anything that warranted the use of deadly force against him.

165.    Defendant Harrison knew or should have known that use of deadly force against an unarmed and non-combative subject was an unconstitutional use of excessive force under the Fourth Amendment.

166.    As a direct and proximate result of Defendants' violation of Plaintiff Ryan Smith's Fourth Amendment Rights, Plaintiff Ryan Smith sustained injuries, some of which were serious and permanent, including abrasions, contusions, welts from Taser use, hip, leg, and knee pain and discomfort, a shattered femur that required an open reduction and internal fixation surgery and surgical debridement, disruption of the nervous, venous, and lymphatic structures and systems in his leg, swelling, compartment syndrome that required a fasciotomy, and residual dysfunction, swelling, and scarring.

167.    Plaintiff Ryan Smith has sustained or may sustain the following damages as a result of his injuries:

   a.   Past and future pain and suffering;

   b.   Past and future loss of life's enjoyment;

   c.   Past and future embarrassment and humiliation;

   d.   Past and future emotional distress;

   e.   Scarring and disfigurement; and

   f.   Past and future medical expenses.

168.    Plaintiff Christine Smith was standing within an arm's reach of her son and Defendant Harrison when he shot her son.

169.    Plaintiff Christine Smith witnessed Defendant Harrison shoot her son.

170.    Blood from her son's gunshot wound splattered Plaintiff Christine Smith.

171.    Defendant Harrison knew or should have known that his use of excessive force, be it deadly force or otherwise, against Ryan Smith while his mother watched just feet away would cause great emotional distress.

172.    As a result of watching her son get shot by Defendant Harrison, Plaintiff Christine Smith suffered a severe shock to her nerves and nervous systems and emotional and mental distress that continues to affect her.

173.    Plaintiff has sustained or may sustain the following damages as a result of her injuries:

    a.  Past and future loss of life's enjoyment;

    b.  Past and future embarrassment and humiliation;

    c.  Past and future emotional distress; and

    d.  Past and future medical expenses.

## STANDARDS

174.    Free citizens have a right to be free from the use of excessive force during arrests, investigatory stops, and other seizures. Graham v. Connor, 490 U.S. 386, 394 (1989).

175.    Claims that police officers used excessive force in an arrest or other seizure of a free citizen are analyzed under the Fourth Amendment's objective reasonableness standard. Graham, 490 U.S. at 395.

176.    To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a "seizure" occurred and that it was unreasonable. Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).

177.    A subject is seized when he submits to a police officer's show of authority or has some degree of physical force imposed upon him by the police officer. Abraham, 183 F.3d at 291.

178.    The reasonableness of an officer's actions is to be determined by the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396.

179.    Whether the use of force is reasonable under the Fourth Amendment is determined based on the totality of the facts and circumstances confronting an officer and without regard to his underlying intent or motivations.  Graham, 490 U.S. at 397.

180.    A police officer's good intentions cannot make an objectively unreasonable use of force constitutional. Graham, 490 U.S. at  397.

181.    A state actor can be liable under the Due Process Clause of the Fourteenth Amendment when his conduct exposes a citizen to state-created danger if the harm caused was foreseeable and direct, the state actor acted with culpability that shocks the conscience, the state actor and citizen had a relationship such that the citizen was a foreseeable victim of the state actor's actions, and the state actor used his authority in a way that created a danger to the citizen or made the citizen more vulnerable to danger than he would have been had the state actor not acted. Kedra v. Schroeter, 876 F.3d 424, 436 (3d Cir. 2017).

182.    Where a state actor need not make a snap judgement, culpability arises from disregard of a great risk of serious harm. Kedra, 876 F.3d at 437

183.    Where the state actor has time to make an unhurried judgement, culpability arises from deliberate indifference. Kedra, 876 F.3d at 437

184.    Whether a state actor acted with deliberate indifference is determined based on whether the risk of harm is so obvious that it should have been known. <u>Kedra</u>, 876 F.3d at 439.


**COUNT I**
**Ryan S. Smith vs. Stuart Harrison**
**Fourth Amendment (Use of Excessive Force) pursuant to 42 U.S.C. § 1983**
**Unreasonable Seizure Prior to Arrest**

185.    The allegations in the preceding paragraphs are incorporated by reference.

186.    Defendant Harrison engaged in a course of conduct that was willful, wanton, deliberately indifferent to and in disregard of a great risk of serious harm to Plaintiff Ryan Smith and his rights such that it shocks the conscience and warrants the imposition of punitive damages.

187.    Plaintiff Ryan Smith had a right to be secure in his person, not be subject to unreasonable seizure, and to be free from the use of excessive force.

188.    Plaintiff Ryan Smith suffered a violation of his personal security and bodily integrity and was subject to an unreasonable seizure when Defendant Harrison tased him and continued to tase him fifteen to twenty times (15 – 20) before either informing him if he did not leave the bank he would be arrested or placing him under arrest.

189.    Defendant Harrison seized Plaintiff Ryan Smith when he first tased him.

190.    Defendant's use of force was not objectively reasonable under the totality of the circumstances:

    a.    Plaintiff Ryan Smith's only potential criminal offense was trespassing – for not leaving the bank when told to do so, not a crime of violence;

b.  Plaintiff Ryan Smith was not informed that he was under arrest or that he would be arrested if he failed to leave the bank;

c.  Plaintiff Ryan Smith was not informed that he would be tased if he failed to leave the bank;

d.  Plaintiff Ryan Smith posed no immediate threat of harm to himself, Defendant Harrison, or anyone else;

e.  Plaintiff Ryan Smith had not acted in a hostile, combative, aggressive or physically threatening manner toward anyone;

f.  Plaintiff Ryan Smith had not been verbally threatening toward anyone;

g.  There were no emergent circumstances that required immediate action; and

h.  Plaintiff Ryan Smith only passively resisted Defendant Harrison's attempts to get him to exit the bank.

191.    An objectively reasonable police officer would have understood that use of a Taser against Plaintiff Ryan Smith under such circumstances would be a clearly unconstitutional use of excessive force.

192.    An objectively reasonable police officer would have recognized that repeated and continued use of force solely for the purpose of inflicting pain was a clearly unconstitutional use of excessive force.

193.    Defendant Harrison's actions were the direct and proximate cause of Plaintiff Ryan Smith's harm.

194.    The harm suffered by Plaintiff Ryan Smith as a result of Defendant Harrison's use of excessive force was foreseeable.

WHEREFORE, Plaintiff Ryan Smith demands trial before a jury of twelve and judgment against Defendant Harrison for compensatory and punitive damages together with attorney fees, costs of suit, interest, delay damages, and such other relief as the Court shall consider fair and equitable.

## COUNT II
### Ryan S. Smith vs. Stuart Harrison
**Fourth Amendment (Use of Excessive Force) pursuant to 42 U.S.C. § 1983**
**Unreasonable Seizure After Arrest**

195.   The allegations in the preceding paragraphs are incorporated by reference.

196.   Defendant Harrison engaged in a course of conduct that was willful, wanton, deliberately indifferent to and in disregard of a great risk of serious harm to Plaintiff Ryan Smith and his rights such that it shocks the conscience and warrants the imposition of punitive damages.

197.   Plaintiff Ryan Smith had a right to be secure in his person, not be subject to unreasonable seizure, and to be free from the use of excessive force.

198.   Plaintiff Ryan Smith suffered a violation of his personal security and bodily integrity and was subject to an unreasonable seizure when Defendant Harrison attempted to tase Plaintiff Ryan Smith while placing him in the rear of a police car and shot Plaintiff Ryan Smith in the leg with his service pistol while doing so.

199.   Defendant Harrison's use of force was not objectively reasonable under the totality of the circumstances:

a.   Plaintiff Ryan Smith was handcuffed;

b.   Plaintiff Ryan Smith was in custody;

    c.   Plaintiff Ryan Smith was under the physical control of Defendant Harrison and Officer Matthews;

    d.   Plaintiff Ryan Smith was not attempting to flee;

    e.   Plaintiff Ryan Smith had not committed a violent crime;

    f.   Plaintiff Ryan Smith was not acting in a hostile, combative, aggressive or physically threatening manner toward anyone;

    g.   Plaintiff Ryan Smith was not being verbally threatening toward anyone;

    h.   Plaintiff Ryan Smith posed no threat of harm to himself or anyone else;

    i.   There were no emergent conditions that required immediate action;

    j.   Defendant Harrison had been informed that Plaintiff Ryan Smith had psychiatric issues or was otherwise not in his right mind;

    k.   Plaintiff Ryan Smith was not informed that he would be tased if he failed to place his legs in the police car; and

    l.   Plaintiff Ryan Smith was only passively resisting Defendant Harrison's efforts to get him to put his feet in the police car.

200.   An objectively reasonable police officer would have understood that use of a Taser against Plaintiff Ryan Smith under such circumstances would be a clearly unconstitutional use of excessive force.

201.   An objectively reasonable police officer would have understood that use of deadly force under such circumstances would be a clearly unconstitutional use of excessive force.

202.    An objectively reasonable police officer would not have confused his service pistol for his Taser and would have recognized that doing so would result in a clearly unconstitutional use of excessive force.

203.    An objectively reasonable police officer would have looked at the weapon in his hand and noticed, prior to pulling the trigger, that the weapon in his hand was black and not yellow like his Taser, was twice as heavy as his Taser, had been drawn without the cross-body draw motion necessary to unholster his Taser, and that the weapon he had drawn was not equipped with a manual thumb safety like the one on his Taser – and – would have recognized that failing to notice that he was holding his service pistol instead of his Taser would result in a clearly unconstitutional use of excessive force if he pulled the trigger.

204.    Defendant Harrison's actions were the direct and proximate cause of Plaintiff Ryan Smith's harm.

205.    The harm suffered by Plaintiff Ryan Smith as a result of Defendant Harrison's use of excessive force was foreseeable.

WHEREFORE, Plaintiff Ryan Smith demands trial before a jury of twelve and judgment against Defendant Harrison for compensatory and punitive damages together with attorney fees, costs of suit, interest, delay damages, and such other relief as the Court shall consider fair and equitable.


**COUNT III**
**Christine Smith vs. Stuart Harrison**
**Fourteenth Amendment pursuant to 42 U.S.C. § 1983**
**Substantive Due Process Violation**

206.    The allegations in the preceding paragraphs are incorporated by reference.

207.   Defendant Harrison engaged in a course of conduct that was willful, wanton, deliberately indifferent to and in disregard of a great risk of serious harm to Plaintiffs Ryan Smith and Christine Smith and their rights such that it shocks the conscience and warrants the imposition of punitive damages.

208.   Plaintiff Christine Smith had a right to be secure in her person, to be free from the harm resulting from the use of excessive force, and to enjoy her life and liberty.

209.   Plaintiff Christine Smith suffered a violation of her personal security and suffered great emotional distress as a result of witnessing Defendant Harrison use excessive force upon her son, which she continues to suffer from today.

210.   It was foreseeable that harm to Plaintiff Ryan Smith would result from the use of excessive force upon him.

211.   It was foreseeable that Plaintiff Christine Smith would suffer emotional distress upon witnessing Defendant Harrison harm her son by shooting him, or otherwise inflict pain upon him through the use of excessive force, due to her maternal relationship.

212.   Defendant Harrison's culpability shocks the conscience:

a.   Defendant Harrison's conduct on May 30, 2018, demonstrated a pattern of using excessive force against Plaintiff Ryan Smith;

b.   Defendant Harrison had deliberative opportunities at each stage of his encounter with Plaintiff Ryan Smith that he ignored and deprived himself of by escalating the use of force at each opportunity.

c.   To the extent that any need for immediacy existed, it was created by Defendant Harrison.

d. Defendant Harrison had special training to avoid the use of excessive force.

e. Defendant Harrison was charged with responsibility for training other police officers serving Spring Grove Borough in the use of Tasers and the use of force generally.

f. Defendant was charged with responsibility for setting or helping to set the policies, practices, and customs for use of Tasers and use of force for police officers serving Spring Grove Borough.

g. Defendant Harrison had the time, ability, knowledge, and training to avoid using excessive force on Plaintiff Ryan Smith and harming Plaintiff Christine Smith as a result but nevertheless failed to do so.

213.   Defendant Harrison knew that Plaintiff Ryan Smith was Plaintiff Christine Smith's son.

214.   Defendant Harrison knew that Plaintiff Christine Smith was in close physical proximity to him and her son when he used excessive force upon him.

215.   But for Defendant Harrison's use of excessive force upon Plaintiff Ryan Smith, Plaintiff Christine Smith would not have suffered harm.

216.   Defendant Harrison's conduct was the direct and proximate cause of Plaintiff Christine Smith's harm.

WHEREFORE, Plaintiff Christine Smith demands trial before a jury of twelve and judgment against Defendant Harrison for compensatory and punitive damages together with attorney fees, costs of suit, interest, delay damages, and such other relief as the Court shall consider fair and equitable.

**COUNT IV**
**Ryan Smith vs. Stuart Harrison**
**Fourth Amendment pursuant to 42 U.S.C. § 1983**
**Supervisory Claims**

217.    The allegations in the preceding paragraphs are incorporated by reference.

218.    Defendant Harrison engaged in a course of conduct that was willful, wanton, deliberately indifferent to and in disregard of a great risk of serious harm to Plaintiff Ryan Smith and his rights such that it shocks the conscience.

219.    At all relevant times, Defendant Harrison was a firearms and Taser trainer for police officers serving Spring Grove Borough.

220.    In whole or in part, Defendant Harrison set the use of force policy, practices, and customs for police officers serving Spring Grove Borough.

221.    Defendant Harrison trained police officers serving Spring Grove Borough in the use of force policies, practices, and customs that he helped to establish.

222.    Defendant Harrison trained police officers serving Spring Grove Borough in the policies, practices, and customs concerning the use of Tasers.

223.    Plaintiff Ryan Smith suffered harm as a direct and proximate result of Defendant Harrison's failure to set and encourage adherence to policies, practices, and customs that would avoid the use of excessive force by police officers serving Spring Grove Borough.

224.    Plaintiff Ryan Smith suffered harm as a direct and proximate result of Defendant Harrison's failure to properly and adequately train police officers serving Spring

Grove Borough in use of force policies, practices, and customs that would avoid the use of excessive force by police officers serving Spring Grove Borough.

225.    Plaintiff Ryan Smith suffered harm as a direct and proximate result of Defendant Harrison's failure to properly and adequately train police officers serving Spring Grove Borough  in policies, practices, and customs concerning the use of Tasers that would avoid the use of excessive force by police officers serving Spring Grove Borough.

226.    It was reasonably foreseeable that these failures would result in the use of excessive force by police officers serving Spring Grove Borough, including Defendant Harrison himself.

227.    Defendant Harrison's actions were the direct and proximate cause of Plaintiff Ryan Smith's harm.

WHEREFORE, Plaintiff Ryan Smith demands trial before a jury of twelve and judgment against Defendant Harrison for compensatory and punitive damages together with attorney fees, costs of suit, interest, delay damages, and such other relief as the Court shall consider fair and equitable.

### COUNT V
### Ryan S. Smith vs. SWRPD, SWRPB, & Spring Grove
### Fourth Amendment pursuant to 42 U.S.C. § 1983
### Municipal Claims

228.    The allegations in the preceding paragraphs are incorporated by reference.

229.    Defendant SWRPD's, SWRPB's, and/or Spring Grove's actions and inactions with regard to establishment of policies, practices, and customs concerning the use

of force and use of Tasers and to provision of training regarding the use of force and use of Tasers were objectively unreasonable and reflect deliberate indifference to the constitutional rights of Plaintiff Ryan Smith and other free citizens subjected to seizure by police officers serving Spring Grove Borough.

230.   Defendants SWRPD, SWRPB, and/or Spring Grove maintained policies, practices, and customs concerning the use of force that were a moving force behind the violation of Plaintiff Ryan Smith's constitutional rights.

231.   Defendants SWRPD, SWRPB, and/or Spring Grove maintained policies, practices, and customs concerning the use of Tasers that were a moving force behind the violation of Plaintiff Ryan Smith's constitutional rights.

232.   Defendants SWRPD, SWRPB, and/or Spring Grove failed to provide proper and adequate training to police officers serving Spring Grove Borough concerning the use of force and Tasers and those training deficiencies were a moving force being the violation of Plaintiff Ryan Smith's constitutional rights.

233.   Defendant SWRPD's, SWRPB's, and/or Spring Grove's actions and inactions were the direct and proximate cause of the violation of Plaintiff Ryan Smith's constitutional rights and physical harm.

234.   The harm to Plaintiff Ryan Smith caused by Defendant SWRPD's, SWRPB's, and/or Spring Grove's actions and inactions was foreseeable.

WHEREFORE, Plaintiff Ryan Smith demands trial before a jury of twelve and judgment against Defendants SWRPD, SWRPB, and/or Spring Grove for compensatory

damages together with attorney fees, costs of suit, interest, delay damages, and such other relief as the Court shall consider fair and equitable.

Respectfully submitted,

Date: **5/8/20**

Timothy L. Salvatore, Esq.
Katherman, Briggs & Greenberg, LLP
110 N. George Street, Third Floor
York, PA 17401
717-848-3838 x 2500 Tele
717-814-4056 Direct Fax
No. PA 77398
Attorney for Plaintiff Ryan Smith